Teddy W. BAKER, et al.,
Plaintiffs–Appellees,

v.

GTE NORTH INCORPORATED,
Defendant–Appellant.

Nos. 96–2368, 96–3625.

United States Court of Appeals,
Seventh Circuit.

Submitted March 20, 1997.

Decided April 2, 1997.

Marvin Gittler (submitted), Stephen J. Feinberg, Patricia A. Collins, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, Samuel J. Goodman, Joseph S. Bokkelen, Goodman, Ball & VanBokkelen, Highland, IN, for plaintiffs–appellees.

Richard S. Huszagh, David G. Lynch, Steven L. Loren, Rudnick & Wolfe, Chicago, IL,

John G. Roberts, Jr., Gregory G. Garre, Hogan & Hartson, Washington, DC, Patrick J. Hinkle, Kalamaros & Associates, South Bend, IN, for defendants–appellants.

Before EASTERBROOK, KANNE, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

GTE North formerly required all of its "facility maintainers" (electricians who install and maintain telephone and transmission equipment, on customers' premises or otherwise in the field) to report for duty at its local offices. There they received assignments for the day, hopped into company vehicles suitable to the job, and drove to the first place where they were to work that day. They were paid for the time it took to drive to that site and for the time driving back at day's end. In 1991 GTE and the Communications Workers of America signed a collective bargaining agreement under which employees could use their GTE vehicles to drive from home to their first work site of the day, then from work back home. Employees choosing this option—the "home dispatch program" or "HDP"—receive assignments, and report their completion, on portable terminals. Choosing the HDP can save employees a lot of time, not to mention wear and tear on their own cars. For example, instead of driving to GTE's office, which may be 20 miles to the north, and then driving to the first job, perhaps 30 miles to the south, the employee drives straight to the job, saving 80 miles round trip. Under the collective bargaining agreement, convenience has a cost: compensated time begins only when the employee arrives at the first job site. GTE thus obtains more productive work per eight-hour shift, and employees get extra free time.

Thirteen employees who signed up for this win-win proposition, and acknowledged in writing that they would not be paid for time driving to the first work site of the day (or home from the last), later filed this suit under the Fair Labor Standards Act, contending that the time is nonetheless compensable (and at overtime rates, if when added to other time the work week exceeds 40 hours). GTE relied on § 4(a)(1) of the Por-

tal–to–Portal Act of 1947, which provides that the FLSA does not count hours during which the employee is "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform". 29 U.S.C. § 254(a)(1). The district judge granted summary judgment to the plaintiffs, 927 F.Supp. 1104 (N.D.Ind. 1996), ruling that, because GTE's vehicles carry special tools, and may themselves be essential to the work (for example, they may include lift buckets), getting vehicle to job site is a "principal activity" of the employment, and hence not exempted. The court awarded back pay, overtime, and liquidated damages between $10,000 and $45,000 per employee, plus attorneys' fees of some $175,-000.

While GTE's appeal was pending, Congress amended the Portal–to–Portal Act by adding this language at the end of § 4(a):

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

Employee Commuting Flexibility Act of 1996, § 2102 of Pub.L. 104–188, 110 Stat. 1755, 1928 (1996). Section 2103 adds that the amendment "shall take effect on the date of the enactment of this Act [August 20, 1996] and shall apply in determining the application of section 4 of the Portal–to–Portal Act of 1947 to an employee in any civil action brought before such date of enactment but pending on such date." Unambiguous language of this kind makes the amendment fully retroactive. See *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

GTE asked us to reverse summarily in light of the amendment. Plaintiffs resisted,

arguing that they did not necessarily use the vehicles "for commuting", and that they should have an opportunity to brief the question fully. A motions panel referred GTE's request to the merits panel, for consideration after briefing had been completed. After ample opportunity for reflection, plaintiffs filed a brief conceding that the amendment "retroactively invalidates their judgments if its retroactivity is constitutional." Plaintiffs argue that it is not constitutional, because Congress did not have a good reason to make the change retroactive.

■■■ Whether this argument is properly before us may be doubted. Litigants who want a court to declare an Act of Congress unconstitutional must give notice, so that the Attorney General may exercise the statutory right to intervene on behalf of the United States to defend the law. 28 U.S.C. § 2403. Federal Rule of Appellate Procedure 44 implements this statute by requiring a person who questions the constitutionality of an Act of Congress "to give immediate notice in writing to the court of the existence of said question." This means something more than just making an argument in the brief; otherwise Rule 44 would be superfluous. Plaintiffs did not give such a notice, and the Attorney General has not been notified. But if the Department of Justice's arguments in support of the law prove to be unnecessary, a court may dispose of the constitutional challenge without ado, a step appropriate here. Congress has an unquestioned right to make economic legislation retroactive, provided that this does not require the revision of a judgment that has become final. Compare *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), with *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 14–20, 96 S.Ct. 2882, 2891–95, 49 L.Ed.2d 752 (1976). The judgment in this case was not final; it was pending on appeal, and courts of appeals regularly revise judgments so that they conform to new law. *Landgraf*, 511 U.S. at 273–80, 114 S.Ct. at 1501–1505 (collecting cases).

Ample support for retroactivity comes to mind. (None appears in the statute, but Congress need not enact a statement of reasons, see *FCC v. Beach Communications,*

*Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993).) First, the amendment conforms law to contract. Employees who consented to drive to work on their own time—as these plaintiffs did, and as everyone covered by the amendment will have done—lack a powerful claim to the aid of a court in going back on their word. Second, the amendment resolves an ambiguity in the statute. Section 4(a)(1) uses but does not define the term "principal activities," and as the district court's opinion shows this term has been difficult to pin down. Clarification that causes all similar cases throughout the nation to come out the same way on appeal, regardless of the district courts' initial decisions, is a rational step for a legislature to take—and the due process clause requires nothing more than rationality.

■■■ Although we said above that the plaintiffs concede that they lose under the amendment, this is not quite right. One of their number, Teddy Baker, argues that the amendment does not apply to him. Baker joined the HDP but does not drive GTE's vehicle all the way home. He leaves the van at GTE's office in Wabash, Indiana, about two miles from his home, switches to his car, and drives the car the rest of the way. Since 1994 Baker's duty station has been in North Manchester, Indiana, about 18 miles from his home, so participation in the HDP saves him an average of 35 commuting miles per day. According to Baker, the 1996 amendment deals only with home-to-work commuting; he uses the HDP to avoid the Wabash–to–Manchester drive, not a home-to-Manchester drive, and therefore is not affected by the legislation. Baker's problem is that nothing in the statute limits its application to employees who drive the company vehicle all the way home. It covers "use of an employer's vehicle for travel by an employee" and "activities performed by an employee which are incidental to the use of such vehicle for commuting", but "from home" is not in the text and does not modify either "travel" or "commuting". Some of the legislative history mentions the home-to-work commute, doubtless the normal case, but the text of the law extends beyond the most frequent situation. Statements in committee reports and on the

floor of Congress do not modify what the legislature actually enacts.

Baker was *entitled* to drive GTE's vehicle all the way home; he decided, for reasons of personal convenience, not to do so. An employee who leaves the company car in a parking lot a block away from his house and walks the rest of the way does not become entitled to compensation for driving time, while the employee who pulls into the driveway goes unpaid. Just like the other 12 electricians, Baker used GTE's vehicle for travel to work, and performed activities, such as purchasing fuel, "incidental to the use of such vehicle for commuting". The other elements of the statute—"normal commuting area" and employee consent—are concededly satisfied.

REVERSED.