**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED TRANSPORTATION
UNION LOCAL 1745; ROBERT C.
GUTIERREZ, Chairman; JOHN D.
HUNTER, President; JOHN BARNES,
ANTHONY CHAVEZ, DAVID
LOVATO, DOROTHEA MONTANO,
DALE J. PADILLA, JACOB
ROMERO, LEROY SAAVEDRA,
PATRICIA SANDOVAL, and
similarly situated MOTORCOACH
OPERATORS,

      Plaintiffs-Appellees/
      Cross-Appellants,

    v.

CITY OF ALBUQUERQUE; MARTIN
CHAVEZ, Mayor; and LAWRENCE
RAEL, Chief Administrative Officer,

      Defendants - Appellants/
      Cross-Appellees.

Nos. 97-2394
and 97-2400

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-96-716-LH)**

---

Edward W. Bergmann, Seyfarth, Shaw, Fairweather & Geraldson, Chicago,
Illinois (Noah A. Finkel, Seyfarth, Shaw, Fairweather & Geraldson, Chicago,
Illinois, and Charles W. Kolberg, City of Albuquerque, Albuquerque, New
Mexico, with him on the briefs), for Appellants/Cross-Appellees.

Paul S. Livingston, Albuquerque, New Mexico (Daniel R. Elliott III and Kevin C. Brodar, United Transportation Union, Cleveland, Ohio, with him on the briefs), for Appellees/Cross-Appellants.

---

Before **SEYMOUR**, Chief Judge, **ANDERSON**, and **BRISCOE**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Plaintiffs-Appellees are 155 bus drivers employed by defendant-appellant, the City of Albuquerque ("City").[1] Most of them work "split shifts," in that they work a morning shift and a late afternoon shift, separated by a three- to five-hour split shift period in which they are free to do what they wish, before reporting back at a specific location to begin their second shift. The drivers brought this action against the City, claiming that the City violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262, by failing to compensate them for (1) time spent on split shift periods and (2) time spent on City-operated shuttles going to and from the beginning and/or end points (called "relief points") of their driving shifts.

---

[1]The other named plaintiffs are the United Transportation Union Local 1745, its chairman, Robert C. Gutierrez, and its president, John D. Hunter. Unless otherwise indicated, we refer to all the plaintiffs collectively as the drivers or the bus drivers. The other named defendants are Martin Chavez, the mayor of Albuquerque, and Lawrence Rael, the City's chief administrative officer. Unless otherwise indicated, we refer to all the defendants collectively as the City.

After both sides filed motions for summary judgment, the district court held that only the time traveling on City shuttles *from* a relief point after a driver's first run of the day or *to* a relief point to begin a second run is compensable, thereby denying in part and granting in part both sides' summary judgment motions.

We certified the City's 28 U.S.C. § 1292(b) interlocutory appeal challenging the district court's conclusion that shuttle time traveling to or from a relief point, either immediately preceding or immediately following a non-compensable split shift period, is compensable. The drivers filed a cross-appeal, challenging the district court's conclusions that (1) aside from the shuttle time at either end, the split shift periods are non-compensable, and (2) time spent traveling to and from relief points at the beginning and end of the day are non-compensable.[2] We affirm.

---

[2]The drivers also cross-appeal the court's denial of liquidated damages and its refusal to apply an extended statute of limitations. The FLSA provides that an employer who violates the Act by failing to pay compensable wages is ordinarily liable for the unpaid wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, if the employer had a good faith belief that its actions did not violate the FLSA, the court may, in its sound discretion, decline to award liquidated damages. See 29 U.S.C. § 260; see also Department of Labor v. City of Sapulpa, 30 F.3d 1285, 1289 (10th Cir. 1994). Additionally, ordinarily a two-year statute of limitations applies to violations of the FLSA, unless the employer acted willfully, in which case a three-year limitations period applies. See 29 U.S.C. § 255(a); see also Brinkman v. Department of Corrections, 21 F.3d 370, 372 (10th Cir. 1994).

While the drivers raised these issues in their cross-appeal and argued them in their opening brief, they assert in their reply brief that these issues involve factual

(continued...)

# BACKGROUND

The relevant facts are undisputed. In order to serve its customers most efficiently, the City must schedule more buses in the peak commute hours of early morning and late afternoon. Additionally, it must schedule routes so that drivers do not necessarily complete their routes where they started them. Accordingly, many City bus drivers work a morning shift and an evening shift, beginning and ending those shifts at different locations. The time in between the two shifts is the split shift period. 137 of the 155 plaintiff drivers have worked split shifts during the time period relevant to this lawsuit.

All City buses are housed overnight in the City garage. Many drivers begin their morning routes at the City garage and complete those routes at a far-off relief point. Many drivers also begin their afternoon or evening shift at a distant relief point and end up at the City garage. The distances between the garage and these relief points range from six blocks to many blocks.[3]

For many years, City bus drivers were responsible for providing their own transportation to and/or from the City garage, and/or their various relief points. The possibilities included driving their own vehicles, obtaining rides from family

---

[2](...continued)
disputes and are inappropriately resolved on interlocutory appeal. We interpret this as a withdrawal of these issues from the cross-appeal. We therefore do not address them.

[3]The longest shuttle time from a relief point to the City garage is nineteen minutes.

or friends, walking, or taking a fixed-route City bus. At some time during the 1980's, pursuant to a collective bargaining agreement with the United Transportation Union Local 1745, the City began to provide a shuttle service to and from relief points. The shuttle service evolved into its current format–shuttle vehicles driven by designated and exclusive shuttle drivers. Thus, a driver may use a City shuttle to go to or from the City garage and any relief point, at any time during the day. The shuttle service is optional, although many drivers use it. The drivers are not obligated to do anything in particular while riding these shuttles. They stated in response to interrogatories that their activities aboard the shuttles ranged from sitting, to talking with the shuttle driver and other passengers, to simply "waiting." Ex. D-6, Appendix of Pls. Resp. to Interrog. No. 23.

Bus drivers are not obligated to report either at the beginning or the end of the day, or the beginning or end of a shift, to the City garage if their particular route does not require it. In other words, each driver is obligated only to arrive on time at his or her starting point for a shift, and the City does not impose any requirements about where they go following the completion of a shift. The City has never compensated drivers for time spent going to or leaving relief points.

As indicated, most of the plaintiff drivers have worked split shifts. The length of the split shift period varies, but is usually between three and five hours. For purposes of this appeal, the split shift periods are at least one hour.[4]

Drivers are permitted to do anything they wish during their split shift periods, except drink alcohol. Drivers testified about the various things they did during these periods: some went home; some slept in City parks or in nearby air-conditioned buildings; some ran errands; some passed time in the City library or museum; some read; some ate; and one brought her mobile home and spent her split shift in that. If a bus driver was called to a meeting or required to perform any work-related duty during his or her split shift period, the City compensated the driver for that time. Otherwise, the City has never compensated drivers for time spent on split shift periods.

The drivers brought this action under the FLSA, seeking unpaid overtime wages and an equal amount as liquidated damages, an injunction prohibiting future FLSA violations, and attorneys' fees and costs. As indicated, both sides filed motions for summary judgment.[5] The district court held:

_____

[4]113 plaintiff drivers have never had a split shift period of less than one hour during the time relevant to this lawsuit. The City did not move for summary judgment with respect to the remaining 42 plaintiff drivers, twelve of whom have had or may have had split shift periods of less than one hour, and thirty of whom worked "extra board" bids where they substituted for absent drivers on various runs.

[5]The City filed a motion for partial summary judgment. As indicated, the City
(continued...)

1. Time spent by Plaintiffs in traveling in City operated shuttles to relief point for their first or only bus run of the day and from their last or only bus run of the day is not hours worked under the Portal to Portal Act.

2. Time spent by Plaintiffs in traveling in City operated shuttles from a relief point after their first run of the day or to a relief point for their second run of a day when the Plaintiffs work a split shift is not subject to the Portal to Portal Act's exclusion and is compensable.

3. Time spent which is one hour or more between split runs is not spent predominately for the benefit of the City and is not compensable. Period[s] of time of less than one hour between split runs present an unresolved fact issue.

4. The City and the individual Defendants in failing to compensate for the shuttle time described in paragraph two above had a good faith belief that their conduct did not violate the Fair Labor Standards Act and thus Plaintiffs are not entitled to liquidated damages.

5. Plaintiffs have failed to prove that the City and individual Defendants acted wilfully with regard to their failure to compensate for the time described in paragraph two above. Therefore, the two year statute applies.

Order at ¶¶ 1-5, Appellant's App. at 42-43.

Recognizing that "the controlling question herein is novel and has not been previously ruled upon in this circuit," the district court granted an immediate appeal from its order. Id. at ¶ 6. We then granted the City's petition for

---

[5](...continued)
did not move for summary judgment as to 42 of the drivers, who either had split shift periods of less than an hour or who worked extra board bids.

permission to appeal under 28 U.S.C. § 1292(b).  The drivers thereafter filed notice of their cross-appeal.

## DISCUSSION

### I.  Jurisdiction Over Drivers' Cross-Appeal

The City sought and received permission to pursue an interlocutory appeal under 28 U.S.C. § 1292(b).  The drivers did not seek permission to file their cross-appeal.  Thus, we must consider whether we have jurisdiction over the cross-appeal.

"In order to consider the cross-appeal, we must exercise pendent appellate jurisdiction."  Armijo v. Wagon Mound Public Schs., 159 F.3d 1253, 1264 (10th Cir. 1998).  The exercise of pendent appellate jurisdiction is discretionary.  Id. We have observed that the Supreme Court has held that "pendent appellate jurisdiction generally should not be exercised over otherwise interlocutory appeals."  Id.  (citing Swint v. Chambers County Comm'n, 514 U.S. 35, 50-51 (1995)).  We, however, interpret Swint to permit the exercise of jurisdiction over such appeals in limited circumstances:  "'pendent appellate jurisdiction might still be appropriate where the otherwise nonappealable decision is "inextricably intertwined" with the appealable decision, or where review of the nonappealable decision is "necessary to ensure meaningful review" of the appealable one.'"  Id.

(quoting Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995) (quoting Swint, 514 U.S. at 51)). We have further interpreted "inextricably intertwined" to include only situations where "the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal–that is, where the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well." Moore, 57 F.3d at 930.

In this case, the City's interlocutory appeal, properly before us, challenges the district court's conclusion that the shuttle time to and from relief points at either end of a split shift period is compensable. The drivers' cross-appeal challenges the district court's conclusion that the entire split shift period is not compensable, as well as its conclusion that shuttle time to and from relief points for the first and last shifts of the day is not compensable. While it is clear that resolution of the issue of compensability for the entire split shift period could subsume the issue of whether a part of that period (the shuttle time to or from a relief point at the beginning or end of the split shift period) is compensable—particularly if we hold that the entire period, from the end of a driver's first run to the beginning of his second run is compensable—it is less obvious that the converse is true. We nonetheless hold that we have jurisdiction over the drivers' cross-appeal because it is inextricably intertwined with the City's appeal. This is

so because the resolution of the City's appeal requires us to analyze the drivers' entire work day, including any and all time shuttling to and from driving shifts.

As indicated, the City's appeal addresses the two periods of time at the beginning and end of the split shift period. Thus, it involves an analysis of two sub-periods of time within the entire split shift period. Resolution of the compensability of those two sub-periods necessarily requires an analysis of the entire period, if only because we begin our analysis by considering how we characterize that entire split shift period. Moreover, the district court's conclusion, challenged by the City's interlocutory appeal, that *only* those two sub-periods are compensable necessarily includes the conclusion that the remainder of the split shift period is not compensable. If we affirm the district court's conclusion that only those two sub-periods are compensable, we have by implication held that something less than the entire split shift period is compensable.

However, the drivers' cross-appeal also challenges the district court's conclusion that shuttle time to relief points for the drivers' first or only bus run of the day and from their last or only bus run of the day is excluded from a driver's compensable work day under the Portal-to-Portal Act. We have observed that "the 'narrow avenue for the continued use of pendent appellate jurisdiction left open by <u>Swint</u>' does not apply if a 'ruling on the merits' of the interlocutory

appeal does not resolve <u>all of the remaining issues</u> presented by the pendent appeal.'" <u>Armijo</u>, 159 F.3d at 1265 (quoting <u>Moore</u>, 57 F.3d at 930) (emphasis added).  Accordingly, to assume jurisdiction over the drivers' cross-appeal, we must find that this issue also is inextricably intertwined with the City's appeal. We hold that it is.

To resolve the issue of the compensability of the shuttle time to and from a beginning or ending or only bus run, we must analyze the structure of the drivers' entire work day—i.e., two shifts separated by a split shift, with the drivers beginning and/or ending at relief points.  Characterizing the work day, for purposes of compensation under the FLSA and/or the Portal-to-Portal Act, necessarily involves characterizing each part of the drivers' day, including all shuttle time to and from relief points.

We therefore conclude that all issues raised in this appeal and cross-appeal are inextricably intertwined and require a comprehensive analysis of the structure of the drivers' work day.[6]

_____

[6]Cases in which we and other courts have declined to exercise pendent appellate jurisdiction are distinguishable because, unlike this case, they involved separate claims under separate statutory schemes or legal theories.  In <u>Armijo</u>, for example, the plaintiffs sued the defendants for alleged violations of 42 U.S.C. § 1983 and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400-1487 ("IDEA").  The defendants filed an interlocutory appeal from the district court's denial of their summary judgment motion seeking qualified immunity from the "danger creation" § 1983 claim, and the plaintiffs sought to cross-appeal the district court's grant of summary judgment to the defendants on the IDEA and failure to train §1983 claims.

(continued...)

-11-

## II. Merits of Appeal and Cross-Appeal

"We review summary judgment determinations de novo, applying the same standard used by the district court under Fed. R. Civ. P. 56(c)." Ball v. City of Dodge City, 67 F.3d 897, 899 (10th Cir. 1995).

Generally, the FLSA requires employers to pay employees a minimum wage for a forty-hour work week, as well as overtime for hours worked over forty per week. See 28 U.S.C. §§ 206, 207. The FLSA does not define hours worked or employment, but Department of Labor regulations, and case law, provide some

---

[6](...continued)
We refused to exercise pendent jurisdiction over the plaintiffs' cross-appeal, noting that a ruling on the qualified immunity claim would not resolve the plaintiffs' quite different and distinct IDEA claims.

Similarly, in Foote v. Spiegel, 118 F.3d 1416 (10th Cir. 1997), we declined to exercise pendent appellate jurisdiction, describing as follows the difference between the claims sought to be appealed:

> [R]esolution of the properly appealable issues–the appealable portion of the denial of qualified immunity for the continued roadside detention and the denial of qualified immunity for the strip search–will not necessarily resolve Foote's claims that the district court erred in denying summary judgment in her favor on the legality of the initial stop and arrest.

Id. at 1423. See Murphy v. Arkansas, 127 F.3d 750, 753-54 (8th Cir. 1997) (declining to exercise pendent appellate jurisdiction over cross-appeal involving Title VII and ADEA claims, noting that those claims "are not in the least bit intertwined with issues of Eleventh Amendment and qualified immunity").

Here, by contrast, instead of involving completely separate claims under different statutes, the appeal and cross-appeal involve the question of whether different parts of a bus driver's work day are compensable under a single statutory scheme.

-12-

guidance.[7]  "Work is 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer.'"  Reich v. IBP, Inc., 38 F.3d 1123, 1125 (10th Cir. 1994) (quoting Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944)).[8]

By contrast, "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked."  29 C.F.R. § 785.16.  Each case is fact-specific:  "Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all the facts and circumstances of the case."  Id.  "[T]he test for whether an employee's time constitutes working time is whether the 'time is spent predominantly for the employer's benefit or for the employee's.'"  Gilligan v. City of Emporia, 986 F.2d 410, 412 (10th Cir. 1993) (quoting Boehm v. Kansas City Power & Light Co., 868 F.2d 1182, 1185 (10th Cir. 1989) (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944))).

---

[7]We have noted that "FLSA regulations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" Lamon v. City of Shawnee, 972 F.2d 1145, 1151 n.7 (10th Cir. 1992) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

[8]The Supreme Court subsequently ruled that there need not in fact be any "exertion" for an activity to be work.  "[A]n employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen."  Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944).

-13-

The FLSA was amended by the Portal-to-Portal Act, 29 U.S.C. §§ 251-262. Under the Portal-to-Portal Act, employers are not obligated to compensate employees for "walking, riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," as well as "activities which are preliminary to or postliminary to said principal activity or activities," where such "traveling" or "activities" "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a). By contrast, travel that is "part of [an employee's] principal activity" is compensable hours worked. 29 C.F.R. § 785.38. The Supreme Court has held that "activities performed either before or after the regular work shift . . . are compensable . . . if those activities are an integral and indispensable part of the principal activities for which [the employees] are employed." Steiner v. Mitchell, 350 U.S. 247, 256 (1956); see also Baker v. Barnard Constr. Co., 146 F.3d 1214, 1216 (10th Cir. 1998). "Whether an activity is preliminary or postliminary to principal activities for purposes of § 254(a)(2) of the Portal-to-Portal Act is a mixed question of law and fact because the precise nature of the employee's duties is a question of fact, while application of the FLSA to those duties is a question of law." Baker, 146 F.3d at 1216.

-14-

The Portal-to-Portal Act was subsequently amended by the Employee Commuting Flexibility Act of 1996 to clarify that otherwise non-compensable commuting to work is not compensable merely because the employee uses his employer's vehicle.[9] Each case turns on the particular facts and circumstances involved.

As indicated, there are three periods of time in dispute in this case. We examine each one.

## A. Split shift period

We begin by considering the entire split shift period in excess of one hour. The district court held that the split shift period was not compensable. We agree.

The drivers argue that the split shift period is compensable waiting time under the FLSA. The Department of Labor regulations, following case law, analyze waiting time by drawing a distinction between an employee who is "waiting to be engaged" as opposed to one who is "engaged to wait." An

---

[9]29 U.S.C. § 254(a) now includes the following:

[T]he use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

-15-

employee is on duty, is engaged to wait, where "waiting is an integral part of the job." 29 C.F.R. § 785.15.  Examples include the following:  "[a] stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while waiting for machinery to be repaired." Id.

On the other hand, an employee is off duty, is waiting to be engaged, where he is "completely relieved from duty" and where the time period is "long enough to enable him to use the time effectively for his own purposes." 29 C.F.R. § 785.16(a).  Further, "[h]e is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived." Id.  Those regulations, and the cases from which they are derived, compel the conclusion that the bus drivers were off duty during their split shift periods.

The undisputed evidence shows that most drivers had a three to five hour period in which they were free to do anything they chose except drink alcohol, knowing that they would "not have to commence work until a definitely specified hour has arrived." Id.  Most of them were able to "use the time effectively for [their] own purposes" without restrictions. Id.  The fact that the split shift period

-16-

is less convenient or less desirable than a straight shift does not mean that the drivers are on duty and deserving compensation during that shift; it simply means that their work schedule is not ideal.[10] We therefore hold that the drivers' split shift periods are not hours worked under the FLSA.[11]

_____

[10]As all parties acknowledge, there is very little case law on the compensability of split shifts, although such work schedules are fairly common in the transportation industry and in other industries like the restaurant business and mining. The few cases we have found support our conclusion. See Walling v. Clinchfield, 64 F. Supp. 347, 350 (W.D. Va.) (holding that period between two mining shifts is not hours of work where the miners were "free to leave the mines, go home, or do anything they pleased"), aff'd, 159 F.2d 395 (4th Cir. 1946); Bohn v. B & B Ice & Coal Co., Inc., 63 F. Supp. 1020, 1023 (W.D. Ky. 1946) (holding that period between two shifts is not hours worked when the employee was away from the plant, even though he was subject to being called back).

There are more cases addressing the issue of whether a particular on-call arrangement entitles an employee to compensation for on-call time. The regulations state that "[a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'" 29 C.F.R. § 785.17. The fact that courts have held that employees who are on-call, and definitely more restricted in their ability to pursue personal pursuits than the bus drivers here, are nonetheless not on duty, further supports our conclusion. See, e.g., Dinges v. Sacred Heart St. Mary's Hosps., Inc., No. 98-1639, 1999 WL 3940 (7th Cir. Jan. 7, 1999) (holding that emergency medical technicians who must live within seven minutes of hospital, cannot engage in any activities which would prevent them from hearing and responding promptly to pager, and cannot drink alcohol are not "working" while on call). As we have stated, "[o]n call time is compensable if the on call requirements are so restrictive they interfere with employees' personal pursuits." Armitage v. City of Emporia, 982 F.2d 430, 432 (10th Cir. 1992). Compare Renfro v. City of Emporia, 948 F.2d 1529, 1531-32 (10th Cir. 1991) (holding that on-call time is compensable because firefighters averaged four to five callbacks per day, had to respond within 20 minutes, had great difficulty arranging shift trades, and were disciplined if they were late or failed to respond to a callback) with Gilligan v. City of Emporia, 986 F.2d 410, 411-13 (10th Cir. 1993) (holding that on-call time is not compensable when employees were called back less than once a day, had 30 minutes to respond, and were free to pursue personal activities with little interference).

[11]Pursuant to their collective bargaining agreement, the City pays drivers who
(continued...)

-17-

**B. Shuttle Times**

We must consider the compensability of two different shuttle times. We address each in turn.

**1. To and from relief points at either end of split shift period**

Although we have held that the split shift periods in general are not compensable hours worked, we do not thereby necessarily exclude the possibility that the shuttle time drivers spend either leaving their relief point at the beginning of their split shift period, or going to their relief point at the end of that period, could be compensable. This is so because, while we have held that resolution of this latter issue is intertwined with our resolution of the entire split shift period, we cannot overlook the possibility that some distinction between the two periods of time may make one compensable and the other not. The district court held the shuttle time at issue here was compensable, finding that "[t]he riding of shuttles is integral and indispensable to this system of dispatching and relieving drivers at

[11](...continued)
drive split shifts a "split shift differential," an additional 25¢ to 35¢ per hour, depending on the length of the total run. The drivers argue that the City's payment of this split shift differential constitutes an acknowledgment that the split shift period is compensable. We disagree. The fact that the drivers and the City agreed in their collective bargaining agreement to pay more for the less desirable split runs does not control whether the split shift period is compensable hours worked under the FLSA.

different times and remote locations throughout the city." Partial Tr. of Proceedings at 44, Appellant's App. at 33. We agree.[12]

The City's basic argument about this shuttle time is that "[t]here is no meaningful distinction for FLSA purposes between split periods and travel time to and from split periods." Appellant's Br. at 26. In either case, the City claims, drivers are off duty, free to engage in personal pursuits. We disagree.

As indicated above, "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." 29 C.F.R. § 785.16. (emphasis added). We believe there is a meaningful distinction between time spent shuttling to or from a relief point, where a working shift just ended or is about to begin, and the remainder of the drivers' split shift periods, during which they have an extended block of time in which to pursue, as most testified they do, purely personal pursuits. While shuttling to or from a relief point, the drivers are not free to do whatever they wish–they must spend that time traveling to or from a location dictated by the City, and situated to serve the City's need to provide an efficient and useful bus transportation system. They travel to and from such

---

[12]The district court held that only time spent on City shuttles to or from relief points at either end of a split shift period is compensable. The court stated that if a driver "is able to obtain transportation to or from a relief point by some way other than a shuttle between his shift, I conclude it is not compensable time." Partial Tr. of Proceedings at 45, Appellant's App. at 34. The drivers do not appear to challenge this.

-19-

points as a necessary part of their principal activity of driving particular bus routes for the City. While it is true that the entire split shift structure also serves the City's need to provide an efficient and useful bus transportation system, the drivers' ability to use the remainder of the split shift period, aside from the shuttle time to and from relief points, for a wide range of personal pursuits makes a critical difference.

The exemption from hours worked provided by the Portal-to-Portal Act makes no difference to our conclusion. That Act exempts from compensable hours time spent "traveling to and from the actual place of performance of the principal activity or activities . . . either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities," as well as activities which are "preliminary" or "postliminary" to the employee's principal activity. 29 U.S.C. § 254(a); see also 29 C.F.R. § 785.34. The drivers' "principal activity" is the driving of their shifts. This is so whether they drive a split shift or a straight shift within a single workday. "Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38. In our view, the shuttle time to and from relief points at either end of the split shift period is travel time which is "part of [the drivers'] principal activity."

-20-

Indeed, we would, in essence, be holding that each shift is a principal activity in a separate workday, were we to hold that shuttle time to and from each shift is excluded as ordinary commuting time under the Portal-to-Portal Act. The regulations define "workday" under the Act as follows:

> "Workday" . . . means . . . the period between the commencement and completion on the same workday of an employee's principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period.

29 C.F.R. § 790.6. We agree with the district court that we should not turn a single 24-hour period into essentially two 24-hour periods, simply because the drivers drive two shifts separated by a non-compensable off-duty period.[13]

The City argues that the split shift period is like a "bona fide meal period" which is not compensable under the FLSA provided the employee is "completely relieved from duty." 29 C.F.R. § 785.19(a). It argues that, just as employees are not compensated if they choose to travel to a lunch destination, so too a driver should not be compensated when he travels to and from his split shift period. The City overlooks the fact that an employee can obviously choose to travel or not travel to eat lunch, but the drivers *must* get to and from diverse relief points if

---

[13]The City conceded at oral argument that a driver whose runs were not separated by a non-compensable period of time would be entitled to compensation for time spent traveling from one bus run to the next. The fact that the City structures a driver's whole day to include an off-duty period between such travels should not alter the characterization of the travel time, if the travel time in either case is a part of the driver's principal activity, and is required because it benefits the City.

they are to perform their principal activity of driving the particular bus route assigned them. The mere fact that the split shift period is not compensable, just as a bona fide meal period is not, does not mean that all activity related to that period, including any associated travel, should be treated the same.

We therefore hold that the district court, on the undisputed facts of this case, properly granted summary judgment to the drivers on their claim for compensation for time spent traveling on City shuttles to and from relief points at the beginning and end of their split shift periods.[14]

---

[14]We note that, when considering workers' compensation claims for injuries incurred while traveling to or from a split shift period, a few courts have held that such injuries occurred during the course of the employee's employment. See, e.g., Howard v. City of Detroit, 139 N.W. 2d 677, 679-80 (Mich. 1966) (holding that bus driver injured while traveling to commence his second shift was within the course of his employment); Duncan v. South Central Bell Tel. Co., 608 So. 2d 649, 651-52 (La. Ct. App. 1992) (holding that employee killed while leaving first shift was in the course of her employment). But see Cherewick v. Morris G. Laramie & Son, 295 N.W. 268, 269 (Mich. 1940) (holding that employee killed while traveling to second shift was not in the course of his employment). As one court has described the effect of working split shifts:

> [P]laintiff was effectively working a split-shift schedule, which exposed him to hazards of travel to and from the workplace greater than those encountered by an ordinary employee who reports for work and returns home only once each day.

Miles v. Russell Mem. Hosp., 507 N.W. 2d 784, 786 (Mich. Ct. App. 1993). Similarly, the bus drivers in this case are exposed to twice the commuting as a driver who drives a straight shift.

## 2. To and from first or last or only shift of day

Finally, the drivers seek compensation for time spent shuttling to and from either their first or last bus run of the day or, as the case may be, their only bus run of the day. The district court denied relief on this claim, finding that it is excluded from hours worked under the Portal-to-Portal Act. We agree.

This is classic commuting-to-work time, excluded from compensation by the Portal-to-Portal Act. The fact that the drivers use City operated shuttles is irrelevant.[15] Just as with any commute, the undisputed evidence in this case establishes that the drivers are obligated only to appear on time at the particular place from which their first bus runs begins, whether that is the City garage or some relief point. At the end of the day, following their last bus run, they may go home any way they choose, by any means they choose. The fact that some of them may choose to use a City shuttle to go to or from the City garage, as a part of their commute at the beginning or end of their workday, does not transform that time into hours worked under the FLSA and the Portal-to-Portal Act. See Baker v. GTE North Inc., 110 F.3d 28, 30-31 (7th Cir. 1997) (holding that an employee who drove his employer's car to the main office at the end of the day, and then drove his own car home, could not be compensated for any of the travel time); Vega v. Gasper, 36 F.3d 417, 425 (5th Cir. 1994) (holding that farm

---

[15]The Employee Commuting Flexibility Act of 1996, § 2101 of Pub. L. 104-188, 110 Stat. 1755, 1928, which amended the Portal-to-Portal Act, makes that clear.

-23-

workers who chose to ride employer's bus for 1½ to 2 hours to and from fields, but were not obligated to ride such buses, were engaged in non-compensable "home-to-work-and-back commute").

Moreover, the fact that a driver may end his workday at a relief point, where his own vehicle is unavailable, does not transform what would otherwise be a simple work-to-home commute into compensable hours worked. "Ordinary home to work travel is not compensable under the FLSA, regardless of whether or not the employee works at a fixed location." Imada v. City of Hercules, 138 F.3d 1294, 1296 (9th Cir. 1998). See 29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites."). While it may be more awkward or inconvenient to arrange for transportation to and from work where the employees, like the drivers here, may begin or end their work day at diverse locations, such awkwardness or inconvenience does not change an otherwise non-compensable commute into compensable work time.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order, although we do not address the district court's conclusions on liquidated damages and the two-year statute of limitations.

Nos. 97-2394 and 97-2400, <u>United Transportation Union v. City of Albuquerque</u>

**BRISCOE,** Circuit Judge, concurring and dissenting:

I concur in part and dissent in part.  With respect to the jurisdictional question, I conclude we can reach the issues raised by plaintiffs in their cross-appeal not through the exercise of pendent appellate jurisdiction, but rather because those issues were addressed by the district court in the single order which it certified for appeal pursuant to 28 U.S.C. § 1292(b).  As for the merits of the issues, I agree with the majority that neither the split shift period nor plaintiffs' commuting time prior to the first shift or after the last shift of each day is compensable under the FLSA.  I disagree with the majority, however, that shuttle time occurring during the split shift period (i.e., after the first and before the second shift of each calendar day) is compensable under the FLSA.

### Jurisdiction over plaintiffs' cross-appeal

It is uncontroverted that plaintiffs did not seek, and thus were not granted, permission to file an interlocutory appeal from the district court's certified order. <u>See</u> Fed. R. App. P. 5(a).  Therefore, we must determine whether that failure deprives us of jurisdiction to decide the issues raised in plaintiffs' cross-appeal. The majority, relying on the doctrine of pendent appellate jurisdiction, concludes it does not.  In my view, this is the right result for the wrong reason.

To the extent the doctrine of pendent appellate jurisdiction still exists in light of <u>Swint v. Chambers Co. Comm'n</u>, 514 U.S. 35, 50-51 (1995) (rejecting

exercise of pendent appellate jurisdiction for purely pragmatic considerations), it allows an appellate court "with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable." Id.; see Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995) (concluding notwithstanding Swint, "pendent appellate jurisdiction might still be appropriate where the otherwise nonappealable decision is 'inextricably intertwined' with the appealable decision, or where review of the nonappealable decision is 'necessary to ensure meaningful review' of the appealable one"). By definition, then, the exercise of pendent appellate jurisdiction requires at least one ruling that is independently appealable and one that is not.

The problem here is that all of the issues raised by the parties, including those asserted in plaintiffs' cross-appeal, were independently appealable. In particular, all of the issues were contained in a single order which was certified by the district court for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Had plaintiffs timely sought permission to file an interlocutory appeal, we clearly would have had an independent basis to authorize their appeal, even absent the City filing an appeal. Thus, I am not persuaded the doctrine of pendent appellate jurisdiction is a proper vehicle for exercising jurisdiction over the issues asserted by plaintiffs.

The answer ultimately lies, I believe, in the scope of our appellate

jurisdiction under § 1292(b), which allows a district court to certify for immediate appeal "an *order* not otherwise appealable" if the district court is "of the opinion that such *order* involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the *order* may materially advance the ultimate termination of the litigation." (Emphasis added.) As this statutory language makes clear, "appellate jurisdiction applies to the *order* certified to the court of appeals." Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205 (1996). Thus, although we "may not reach beyond the certified order to address other orders made in the case," we "may address any issue fairly included within the certified order." Id.; see 16 Charles A. Wright et al., Federal Practice and Procedure § 3929, at 388 (2d ed. 1996) ("The court may . . . consider any question reasonably bound up with the certified order, whether it is antecedent to, broader or narrower than, or different from the question specified by the district court."); Note, Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b), 88 Harv. L. Rev. 607, 628-29 (1975) ("scope of review [includes] all issues material to the order in question").

The district court order here was issued October 23, 1997, and contained language certifying the order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In accordance with the time limits and procedures outlined in Fed. R. App. P. 5(a), the City sought, and was granted, permission to file an interlocutory

appeal. As a result, we have jurisdiction over the entire order and may address, in our discretion, any issue "fairly included" therein. Because the issues asserted in plaintiffs' cross-appeal were "fairly included" in the order and have been exhaustively addressed by both parties in their appellate briefs, and resolution of those issues would benefit the parties and the trial court by materially advancing the ultimate determination of this case, I would exercise our discretion and decide those issues at this time.

In reaching this conclusion, I recognize Rule 5 does not expressly contemplate cross-appeals. See Bronk v. Mountain States Tel. & Tel., Inc., 140 F.3d 1335, 1337 n.4 (10th Cir. 1998). This has not, however, prevented this court or other circuit courts from exercising jurisdiction over interlocutory cross-appeals. See Nelson v. American Nat'l Red Cross, 26 F.3d 193, 196 (D.C. Cir. 1994); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); Armstrong v. Executive Office of the President, 1 F.3d 1274, 1290 (D.C. Cir. 1993); Cheyenne-Arapaho Tribes of Okla. v. United States, 966 F.2d 583, 584 (10th Cir. 1992); Meriwether v. Coughlin, 879 F.2d 1037, 1041 (2d Cir. 1989); Burnett v. Dresser Indus., Inc., 849 F.2d 1277, 1278 (10th Cir. 1988); but see Tranello v. Frey, 962 F.2d 244, 248 (2d Cir. 1992) (cross-appellant's failure to file petition for permission to cross-appeal within ten days of § 1292(b) certification was jurisdictional defect that barred court of appeals from hearing cross-appeal). Further, Wright has offered

-4-

persuasive reasons for adopting "a more relaxed approach to cross-appeal requirements" in the context of § 1292(b) appeals. Wright, supra, at 393. In particular, "[n]o justifiable expectations of repose or finality attach to an interlocutory district court ruling, which can be changed by the district court itself at any time before final judgment." Id. at 394. I agree that, in deciding what issues to address in the context of a § 1292(b) appeal, we "should be concerned only that all parties have had adequate notice of all issues to be argued and decided, and that the record affords a secure basis for decision."[1] Id.

## Compensability of split shift periods

I agree with the majority that the split shift periods are not compensable under the FLSA. I would add only that one of the Department of Labor's implementing regulations, 29 C.F.R. § 785.16(b), provides the following example which is similar to the case at hand:

> [I]f [a] truck driver is sent from Washington, DC to New York City, leaving at 6 a.m. and arriving at 12 noon, and is completely and specifically relieved from all duty until 6 p.m. when he again goes on duty for the return trip the idle time is not working time. He is waiting to be engaged.

Like the truck driver in the example, plaintiffs here cannot be considered to be working during their split shift periods occurring between their two shifts.

---

[1] Obviously, a party contemplating an interlocutory "cross-appeal" can avoid many of the problems raised in this case by simply filing its own request under Rule 5(a) for permission to file an interlocutory appeal.

Rather, as the uncontroverted facts indicate, they are free to do as they wish, and are simply "waiting to be engaged."

## Compensability of shuttle time

In determining whether plaintiffs' shuttle time is compensable under the FLSA, the obvious starting point is the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.*, which Congress passed in 1947 as an amendment to the FLSA. Prior to enactment of the Act, the Supreme Court interpreted the FLSA as requiring payment of compensation to employees "for such activities as walking from the factory gate to the workbench, and changing into work clothes." Reich v. New York City Transit Auth., 45 F.3d 646, 649 (2d Cir. 1995) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692-93 (1946)). Concerned with this interpretation, Congress passed the Act to protect employers from responsibility for paying compensation to employees for commuting time, as well as for activities considered preliminary and postliminary to the employees' principal activities. See id. at 649; see also Imada v. City of Hercules, 138 F.3d 1294, 1296 (9th Cir. 1998). In particular, the Act makes it unnecessary for an employer to compensate an employee for time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," when the walking, riding, or traveling occurs "either prior to the time on any particular workday at which such employee

-6-

commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a).

Here, as explained in the majority opinion, the Act clearly applies to time spent by plaintiffs traveling (by whatever method they choose, including the shuttle) from the city garage to relief points prior to the first, and subsequent to the second, shift of each calendar day. In particular, such travel time is "to and from the actual place of the performance of [plaintiffs'] principal activity" (i.e., to and from relief points where plaintiffs perform their job of driving buses), and occurs "either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity." 29 U.S.C. § 254(a).

Shuttle time occurring after the first, and before the second, shift of each day is more difficult to analyze. Unlike the shuttle time that occurs at the beginning and end of each day, this shuttle time occurs in the middle of the day and within the split shift period. Thus, it must first be determined whether this shuttle time occurs during plaintiffs' "workday" for purposes of the Act. If the time occurs during the "workday," the Act does not apply and we must resort to general principles outlined in the FLSA to determine its compensability.

Curiously, the majority suggests shuttle time occurring during the split shift period is not covered by the Act because it is part of plaintiffs' "principal

-7-

activity." I am puzzled by this suggestion for several reasons. First, plaintiffs have never asserted shuttle time occurring during the split shift period is part of their "principal activities" for purposes of the Act. Indeed, the parties are in agreement, and the uncontroverted facts demonstrate, plaintiffs' "principal activity" is limited to driving city buses. Further, and perhaps most importantly, the majority offers no explanation of why shuttle time occurring during the split shift period is analytically different from shuttle time occurring before the first or after the second shift of each day (i.e., why one is part of plaintiffs' "principal activities" while the other is not). In my view, none of the shuttle time is part of plaintiffs' "principal activities" for purposes of the Act.

I now turn to the question of whether the split shift period shuttle time falls within the Act's definition of "workday." As noted, this question is important because the Act expressly governs only travel time that occurs prior to commencement, or subsequent to cessation, of an employee's principal activities on "any particular workday." 29 U.S.C. § 254(a). Likewise, the Department of Labor's implementing regulations provide the Act's provisions regarding travel time "do[] not affect the computation of hours worked within the 'workday' proper, roughly described as the period 'from whistle to whistle." 29 C.F.R. § 790.6(a).

Unfortunately, the Act does not define "workday." Although the

Department of Labor's implementing regulations provide the following definition, it does not completely answer the question posed by this case:

> "Workday" as used in the Portal Act means, in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period. For example, a rest period or a lunch period is part of the "workday," and section 4 of the Portal Act therefore plays no part in determining whether such a period, under the particular circumstances presented, is or is not compensable, or whether it should be included in the computation of hours worked. If an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his "workday" commences at the time he reports there for work in accordance with the employer's requirement, even though through a cause beyond the employee's control, he is not able to commence performance of his productive activities until a later time. In such a situation the time spent waiting for work would be part of the workday, and section 4 of the Portal Act would not affect its inclusion in hours worked for purposes of the Fair Labor Standards Act.

29 C.F.R. § 790.6(b). The majority suggests "workday," for purposes of the FLSA, is comprised of a single 24-hour period. This cannot be correct. Employees in various industries routinely work varying shifts from day to day, oftentimes with two shifts occurring within a single 24-hour period (depending upon when the 24-hour period is measured). For those workers and their employers, application of the majority's "single 24-hour period" definition would result in inconsistent application of the Portal-to-Portal Act's exemption for commuting time to and from work. For example, consider a restaurant worker who works a 6:00 p.m. to 2:00 a.m. shift on Monday, followed by a 10:00 a.m. to

-9-

6:00 p.m. shift on Tuesday. Under the majority's definition of "workday," the worker's commute time before her Monday shift and after her Tuesday shift would fall within the Act's exemption for commuting time, but her commute time after her Monday shift and before her Tuesday shift would not since the two shifts fall within the same 24-hour time period.

In my view, the only viable definition of "workday" is a period of work (i.e., a period in which an employee is engaged in his or her principal activities) separated on either side by a sufficient amount of off-duty time (e.g., six-eight hours). Unlike the "single 24-hour period" definition (or a "single calendar day" definition), this definition would successfully accommodate all work arrangements, including those in which an employee works two shifts within the same calendar day, or within a single 24-hour period. Applying this definition to the facts at hand, plaintiffs would not be considered to have two "workdays" each calendar day since their two daily shifts are not separated by a sufficient amount of off-duty time. Thus, I agree with the majority that the Act's exclusion for commuting time does not apply to shuttle time occurring during the split shift period.

Because plaintiffs have only one "workday" each calendar day, the resolution of the City's appeal must be determined under the general principles of the FLSA without reference to the Act. The Supreme Court has defined "work,"

-10-

for purposes of the FLSA, as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944). The Court has also concluded waiting or down time may constitute "work" for purposes of the FLSA because "[r]efraining from other activity often is a factor of instant readiness to serve" an employer. Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944). Ultimately, the question of whether a particular activity constitutes work for purposes of the FLSA depends upon whether the time in question "is spent predominantly for the employer's benefit or for the employee's." Id. In deciding this question, the Department of Labor's implementing regulations suggest a significant factor is whether the time at issue can be effectively used by the employee for his own purposes. See 29 C.F.R. §§ 785.15, 785.16, 785.17.

The Department of Labor also has several regulations addressing "travel time." As a general matter, the regulations provide the unhelpful guidance that "[t]he principles which apply in determining whether or not time spent in travel is working time depend upon the kind of travel involved." 29 C.F.R. § 785.33. "Normal travel from home to work is not worktime." 29 C.F.R. § 785.35. This conclusion is arguably derived from the fact that commuting time from home to work (and vice versa) is spent predominantly for the employee's benefit (and can

-11-

be used in any manner seen fit by the employee -- e.g., stops can be made along the way for errands, etc.). In addition, "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38. In connection with this latter principle, the regulations provide the following example:

> If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

Id.

Applying all of these principles to the case at hand, I conclude shuttle time occurring during the split shift period is not compensable working time for purposes of the FLSA. It is true the bus route system was devised by the City to serve its own interests. See Anderson, 328 U.S. at 691 (time spent by factory workers walking from time clock to workstations was "dependent solely upon the physical arrangements which the employer made in the factory"). In this respect at least, the shuttle time benefits the City because it does not have to redesign its bus route system to allow all routes to end at the city garage. On the other hand, and more convincingly in my opinion, it is uncontroverted that plaintiffs are free to do as they wish when they complete a route and are not required to either return to the city garage or to use the shuttle system. Likewise, plaintiffs are free

to arrive at a relief point by whatever means they wish (e.g., shuttle, driving their own car, riding with a relative or friend, etc.). Because the decision to ride the shuttle is wholly voluntary, the fact that the drivers' activities are limited while on the shuttle (due to their presence on a moving vehicle) is immaterial. Plaintiffs perform no tasks for the City during the actual shuttle time. I conclude the time is primarily for the benefit of plaintiffs.

In deciding otherwise, the majority views this case as though plaintiffs are required to start and end each shift at the city garage and to use the shuttle system as their sole means of transportation between the garage and relief points. Further, the majority creates a false distinction between drivers who ride the shuttle and drivers who choose to perform other activities during the split shift period (e.g., walking or driving back to the garage, shopping, going to a library, etc.). Under the majority opinion, although all drivers have discretion concerning how they spend their split shift period, only those drivers who ride the shuttle are entitled to extra compensation. Not even drivers who choose to return directly to the garage by other means are entitled to extra compensation even though their commute time is virtually indistinguishable from drivers who return to the garage by shuttle. In my opinion, the majority has created an incentive for all drivers to use the shuttle system because a driver who opts to take the shuttle will accumulate more compensable hours each week and will be entitled to more pay.

The majority has also created an incentive for the City to completely eliminate the shuttle system to reduce the size of its payroll. Lastly, the majority decision creates as many questions as it answers. What about a driver who, after completing his or her first shift, chooses to shop for an hour and then return to the garage by shuttle? Is that shuttle time compensable under the FLSA? Or a driver who, after completing his or her first shift, visits a library for several hours and then rides the shuttle directly to his or her next relief point?

I would affirm all of the district court's rulings except its conclusion that shuttle time occurring during the split shift period is compensable.